F. W. Angel et al. v. Mrs. Minnie Miller et al.

Delivered January 9, 1897.

**1. Agency—Proof of Held Sufficient.**

Where the evidence showed that defendant borrowed the money of a nonresident, through local agents, the notes therefor being made payable in the name of the principal, and that afterwards such agents received a payment of interest and credited it on the notes, and made an agreement extending the time of their payment, and that several years later such interest payment had never been returned, nor the principal heard of as denying such agent's authority, the proof sufficiently established the agency as to the making of the agreement of extension.

**2. Surety of Wife—Lien on Her Separate Land Released by Extension of Note.**

Where a married woman gives a mortgage upon land which is her separate estate to secure a note of the husband given for his separate debt, an extension of the note by the principal without her assent releases the lien on the land.

Appeal from Dallas. Tried below before Hon. Edward Gray.

*Cobb & Avery*, for appellants.—1. An agent for the collection of a note has no implied authority to make any agreement extending the time of payment of the note, or an agreement whereby the land securing the note is released, and the burden was upon appellees to prove that F. L. Irvine or F. W. Angel had such authority in this case, which they have failed to do. Compress Co. v. Brick Mfg. Co., 64 Texas, 337; Pill-

man v. Freiberg, 2 W. & W. C. C., sec. 582, p. 514; Hutchings v. Munger, 41 N. Y., 155; Lawrence v. Johnson, 64 Ill., 352; Deacon v. Greenfield, 141 Pa. St., 475; 1 Am. and Eng. Encyc. of Law, 2 ed., 1028, 1029; Mech. on Agency, secs. 372-378; Cooley v. Willard, 34 Ill., 68; 85 Am. Dec., 296.

2. Where a note bears 12 per cent interest and the interest is payable semi-annually, the installments of interest bear interest from the time each falls due at 12 per cent per annum, and not at the legal rate by statute. Roane v. Ross, 84 Texas, 46; Crider v. Association, 35 S. W. Rep., 1047.

*Thomas & Turney*, for appellees.—1. The contract between the principal and the creditor for extension released the land, which was but surety for P. B. Miller, the principal. Wofford v. Unger, 53 Texas, 483; Durrell v. Farwell, 88 Texas, 98; Dalton v. Rainey, 75 Texas, 520; Morrison v. Lazarus, 36 S. W. Rep., 428; Bryan v. Morton, 65 Texas, 261; Brandt on Suretyship, secs. 21, 22.

2. While installments of interest overdue bear interest, it is not conventional interest, but such as arises by implication of law and only at the rate provided by law in the absence of a conventional rate. In this case Thompson in his pleading sets up only the conventional interests on the principal "as therein specified;" that is, as in the notes. And having claimed no interest arising by implication, he is entitled to none. Roane v. Ross, 84 Texas, 46.

RAINEY, Associate Justice. — On December 18, 1885, Phil B. Miller and wife, Minnie Miller, executed and delivered two notes to James Thompson, payable to his order, the first for $750, due three years after date, and the second for $250, due one year after date, each bearing 12 per cent interest from date, payable semi-annually, providing for attorney's fees, etc. At the same time appellees executed two deeds of trust on the land in controversy herein to secure these notes, the trust deeds providing for sale thereunder in case of default in the payment of the notes, and for the appointment of substitute trustee, etc. At the date of said notes the said Phil B. Miller and Minnie Miller were husband and wife, and the land was the separate property of the wife, the title standing in her name, and said notes were given for money borrowed by the husband for his own use and purposes.

Indorsements on the notes show that the interest on the first note was paid regularly to December 18, 1887, and on the second note to December 8, 1887.

On the $750 note was the following indorsement: "Received of P. B. Miller $225, as interest on the within note, June 3, 1890. By agreement of all parties, the within note is extended, to become due December 18, 1891—same terms and conditions. James Thompson, per F. L. Irvine, Agent. Phil. B. Miller. Dallas, June 3, 1890."

On the second note was the following indorsement: "Received of

P. B. Miller $75 on the within note as interest, June 3, 1890.   By agreement of all parties, the within note is extended to fall due December 8, 1891, same terms and conditions.   June 3, 1890." James Thompson, per F. L. Irvine, Agent.   Phil. B. Miller."

All the evidence on the question of the extension of the note, except as shown by the indorsements on the notes, is embraced in the testimony of Phil. B. Miller, who testified as follows: "I am one of the plaintiffs in this case, and my wife, Mrs. Minnie Miller, is the other plaintiff. The land involved in this suit is the separate property of my wife; it belonged to her many years before we were married.   She inherited it from her brother, and it was set apart to her by a decree of partition in the District Court of Dallas County; this also occurred many years before we were married.   I obtained the money mentioned in the above notes from F. L. Irvine, agent of James Thompson, for my own use and benefit, and used it in paying off my individual debts contracted before my marriage.   I was married on November 5, 1885, and obtained this loan in December of the same year.   Mrs. Minnie Miller received none of this money, and none of it was used for the benefit of her separate property.   I paid the interest on these notes to December 18, 1887, and December 8, 1887, as shown by the above indorsement on them.   On June 3, 1890, I met Mr. F. L. Irvine, and he told me that my notes were long past due, and that Mr. Thompson was getting after him to collect them or sell the property, and asked me to pay the notes.   I told Mr. Irvine that I could not pay them, and he told me that if I would pay the interest he would extend the notes until December following, a year. I asked him how much it would take to pay them, and he figured it up that the interest to the end of the semi-annual term in June, 1890, would be $300, that is, $225 on the big note and $75 on the other.   This conversation occurred in front of Mr. Irvine's office, then in the building occupied upstairs by Crawford & Crawford as a law office.   I went across the street, and in a few minutes secured the $300.   I went back to Mr. Irvine's office and told him that I had the money.   He told me all right, to settle with Mr. Angel, who was in the office with him.   Mr. Angel got out the notes and said that I would have to pay the interest at the rate of 12 per cent. per annum on the past due interest, and figured up what would be due on the notes.   By figuring interest on the interest at 12 per cent., it amounted to more than $300.   I told Mr. Angel that this was not right; that I did not know that I could raise any more money, and that Mr. Irvine told me that if I would get the $300 that I could have an extension.   Mr. Angel then agreed that I could just pay the $300— $225 on the big note and $75 on the $250 note, and that instead of crediting it with interest paid in full to June 18th on the big note and June 8th on the small note, he would credit $225 on the interest on the $750 note and $75 on the interest on the other note, which was done.   He then wrote the extension on the back of the notes, which shows on the notes, and he signed Mr. Thompson's name by F. L. Irvine, and I signed my own.   Angel had the two notes in the office at the time.

Mr. Irvine was in and out of the office during the conversation, and Mr. Angel was acting under his directions. Mr. Irvine was the agent of James Thompson, the party to whom the notes were payable. At this time, Mrs. Minnie Miller, if I remember correctly, was in Tennessee; anyhow, she knew nothing about this extension at the time, and did not agree to it; in fact, she knew nothing about it until a short time before this suit was filed, three or four weeks ago, and never agreed or consented to said extension."

It was admitted, that F. W. Angel was the duly appointed substitute trustee, and was about to sell the land under the terms of the deeds of trust; that James Thompson was dead; that Frank Thompson was his executor, and entitled to collect the notes. Suit was brought by appellees enjoining said sale in February, 1896.

*Conclusions of Law.*—1. The first contention of appellants is, that there was no authority shown in F. L. Irvine or F. W. Angel to extend the time of payment of said notes, and that there is no evidence showing that the said extension was ever ratified by James Thompson, and that the same is not a binding contract.

We do not concur in this contention. The evidence shows that James Thompson was a nonresident; that F. L. Irvine was representing him in lending the money, and received payments of interest; that he received the money paid at the time the extension was made; that said money had been kept for six years thereafter, until the bringing of this suit; and James Thompson nor his representatives have ever in any way repudiated the contract of said Irvine. Under this state of facts, we think appellants are not in condition to raise the question of want of authority in said agents.

2. It is contended that there was no sufficient consideration upon which to base the contract of extension, and therefore the same was not binding. We are of opinion the facts of this case bring it strictly within the principle laid down in the case of Benson v. Phipps, 87 Texas, 581; and therefore hold said contract of extension to be based upon a valuable consideration.

3. It is contended that even if there was a valid contract of extension, this would not release the land involved in this suit from the deeds of trust, the proposition of appellants being, "where the husband and wife give a deed of trust on the wife's land to secure the husband's debt, an agreement of extension of the debt made with the husband will not release the land."

It is a well settled principle of law that where a payee agrees with the principal in an obligation to extend the time of payment for a valuable consideration, without the knowledge and consent of the sureties thereon, that the sureties are thereby released from liability.

In this case the wife was not bound by her signature to the notes, and by the execution of the deeds of trust the land merely became a security for the debt, and being but a security for the debt, it would be discharged

from liability for the debt by the same acts that would discharge an individual security therefor. Durrell v. Farwell, 88 Texas, 98.

We see no difference in the principle where a wife mortgages her land for the payment of her husband's debts, and a contract made by some other person, not the debtor, mortgaging land to secure a debt.

In the case of Wofford v. Unger, 55 Texas, 480, the rule is announced, "that the husband has no presumptive authority to consent to an extension of a mortgage given by the wife to secure his debt." It is further announced, "that the husband can not, by virtue of his general authority to manage the wife's separate property, revive, as against that property, a claim which has been barred by limitation."

From the principles laid down in that case, we think it clear that the land in controversy, by reason of the extension of time, was released from liability for the debt for which it was originally mortgaged to secure.

It is contended that the court erred in not rendering judgment for interest at the rate of 12 per cent per annum on the interest accrued semi-annually from the date of said accrual, instead of rendering judgment for interest on same at the rate prescribed by law.

There was no error in this action of the court. The contract provided for the payment of the principal, with interest at the rate of 12 per cent per annum, interest payable semi-annually. This contract only provides for the payment of interest at 12 per cent on the principal of the note. There was no contract as to what interest should be paid on the interest that is payable semi-annually after it accrues, and therefore the interest such sums would bear will be the legal rate.

We have been unable to find the exact question passed upon, but the case nearest in point we have been able to find is the case of Town of Pana v. Bowlen, 107 U. S., 529, which we think sustains us on principle.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.