Daniels. From a judgment in favor of plaintiff, defendant appeals. Reversed and remanded.

Warren & Briggs and M. M. Smith, for appellant. J. S. Barnwell, for appellee.

WILLSON, C. J. The suit was by appellee to recover a sum alleged to be due to him from appellant as the maker of promissory notes. The trial was upon an amended petition filed January 6, 1910, and an amended answer filed January 11, 1910.

In said petition it was alleged that the notes were secured by a vendor's lien on two tracts of land conveyed by appellee to appellant. Each of the two tracts was described in said petition as a part of the L. B. Brown survey in Upshur county, and by its metes and bounds. The notes were admitted as evidence. Each of them contained a recital that it was "given in part payment for a certain lot or parcel of land situated in Upshur county, Tex., on the headright survey of L. B. Brown, the same being 31 acres, this day conveyed to me by the said J. M. L. Stewart and wife G. A. Stewart by a deed bearing even date herewith in which said land is fully described, and to secure the payment of which a vendor's lien is retained in said conveyance." Appellee then offered and the court admitted in evidence the original answer of appellant filed January 4, 1910. Said original answer consisted of a general denial, and allegations constituting a cross-action by appellant to cancel the notes, etc., on the ground of fraud. A part of the allegations in the cross-action was as follows: "And the defendant, W. B. Daniels, further and specially answering herein, says that if any such notes as those described in plaintiff's petition this defendant ever executed or delivered to plaintiff, that same were given for part of the purchase money of the land mentioned in plaintiff's said petition." No other evidence was offered for the purpose of identifying the land against which a foreclosure of a vendor's lien was asked. The court instructed the jury to return a verdict in appellee's favor for the amount unpaid of the notes and to find that same was secured by a vendor's lien on the land described in appellee's petition, and in accordance with such a verdict rendered a judgment in appellee's favor against appellant for the sum of $1,052.59 and foreclosing the lien asserted by appellee on the two tracts of land described in his amended petition.

The contention made on this appeal is that the judgment, in so far as it foreclosed a lien on the land described in the amended petition, was without evidence to support it. The contention must be sustained. The admission in the original answer admitted in evidence was that the notes sued on were for "part of the purchase money of the land mentioned in plaintiff's said petition." The petition refer-

red to necessarily was the original petition, for the amended petition had not then been filed. The original petition ceased to be a part of the pleadings in the case when the amended petition was filed. Whether the land described in it was the same as that described in the amended petition cannot be determined from the record. If it was, and if the fact that it was had been shown by the introduction of the original petition in evidence, we think the admission in the original answer made a part of the evidence would have been sufficient to support the judgment foreclosing the lien asserted on the land described in the amended petition. Crosby v. Bonnowsky, 29 Tex. Civ. App. 288, 69 S. W. 213; Ry. Co. v. De Walt, 96 Tex. 121, 70 S. W. 537, 97 Am. St. Rep. 877; Lewis v. Crouch, 85 S. W. 1010; Bank v. Watson, 66 S. W. 234; Austin v. Bank, 125 S. W. 936; Ry. Co. v. Goggin, 33 Tex. Civ. App. 667, 77 S. W. 1053. But as it was not offered as evidence, and as it was not shown in any way that the admission in the original answer applied to the land described in the amended petition, we think the judgment in so far as it foreclosed the lien claimed by appellee was without evidence to support it.

The judgment therefore will be reversed, and the cause will be remanded for a new trial.

RED RIVER NAT. BANK v. BRAY et al.

(Court of Civil Appeals of Texas. Dec. 15, 1910. Rehearing Denied Jan. 5, 1911.)

1. HUSBAND AND WIFE (§ 171*)—SEPARATE ESTATE — MORTGAGE — SECURITY FOR HUSBAND.

A wife's separate property mortgaged for money loaned to him became liable on the same principle as a surety, and anything which would operate as a discharge for a surety would release the lien on the property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 683; Dec. Dig. § 171.*]

2. HUSBAND AND WIFE (§ 171*)—WIFE'S SEPARATE ESTATE—LIABILITY FOR HUSBAND'S DEBTS.

An unauthorized extension by a husband and his creditor of time of payment of a debt secured by deed of trust on the wife's separate property released the lien on the property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 683; Dec. Dig. § 171.*]

3. HUSBAND AND WIFE (§ 138*) — SEPARATE ESTATE—AGENCY OF HUSBAND.

It is not presumed that a husband acts as agent for his wife in extending time of payment of a debt for security of which her separate property is mortgaged.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 138.*]

4. PRINCIPAL AND SURETY (§ 105*)—RELEASE OF SURETY BY EXTENSION OF TIME—INVALIDITY OF AGREEMENT FOR EXTENSION.

The right of a surety to pay the debt on maturity and proceed against the principal is absolute, so that a surety is released from liability by an agreement extending time of pay-

ment though the creditor was induced to make it by fraud of the principal.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 206; Dec. Dig. § 105.*]

5. BANKRUPTCY (§ 20*)—INSTITUTION OF PROCEEDINGS — EFFECT ON JURISDICTION OF STATE COURT.

Where defendant does not set up in his pleading the fact that he has filed a petition in bankruptcy, the state court need not take notice of the bankrupt proceedings, but may proceed to judgment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 20.*]

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Action by the Red River National Bank against E. C. Bray and others. Judgment for defendants, and plaintiff appeals. Reversed and judgment rendered as to part, and affirmed in part.

Chambers & Black and Lennox & Lennox, for appellant. Short & Feild, for appellees.

WILLSON, C. J. April 30, 1906, E. F. Bray and Erminia C. Bray, his wife, executed and delivered to appellant their note for the sum of $4,000, and to secure the payment thereof at the same time executed and delivered to a trustee their deed conveying a house and lot in Clarksville. The house and lot were a part of Mrs. Bray's separate estate, same having been given to her by her grandfather before her marriage. At the time of the transaction mentioned Bray was a member of the firm of Bray Bros., Dry Goods Company, then doing business in Clarksville, but which later, it seems, ceased to do business in Clarksville, and engaged in business at Paris, Sherman, Dallas, and other points. The note referred to represented money borrowed by Bray for use by the Bray Bros. Dry Goods Company in carrying on their business. It was not paid at its maturity. After its maturity, the parties having agreed upon an extension of the time within which the loan should be repaid, the note mentioned was canceled, and other notes representing the indebtedness were executed by Bray and his wife. The other or substitute notes were two in number, and were made April 11, 1907. One of them was for the sum of $2,100, payable October 15, 1907. The other was for the sum of $2,133.30, payable December 15, 1907. At the time Bray and his wife executed and delivered the substitute notes, as security therefor, they executed and delivered to a trustee a deed conveying the house and lot above referred to. Neither of the two notes was paid at its maturity, but between the date of its maturity and July 7, 1908, payments amounting to $1,500 were made on the one due October 15, 1907. As a result of efforts on the part of Bray to induce it to do so, appellant finally, on said July 7, 1908, in consideration of the payment to it in advance of interest to accrue on the notes to October 1, 1908, agreed with Bray to extend the time of payment thereof to said October 1, 1908. Default having then been made in their payment, proceedings were commenced to enforce in accordance with its terms the trust deed last executed, by a sale of the house and lot, when Mrs. Bray joined by her husband commenced her suit to cancel said trust deed and to enjoin appellant and the trustee named in the deed from proceeding further to enforce same. The suit resulted in a judgment granting the relief prayed for by Mrs. Bray, and dismissing appellant's cross-action, whereby it sought, among other things, a recovery against Bray and his wife of the sum unpaid of the two notes executed and delivered by them as substitutes for the $4,000 note.

It clearly appeared that the notes were not executed by Mrs. Bray on account of necessaries furnished her or her children, or on account of expenses incurred by her for the benefit of her separate estate. Therefore, by executing same she incurred no personal liability, and a judgment could not have been rendered against her for the indebtedness they evidenced. But, while she incurred no personal liability on account of the execution by her of the notes, by the execution of the deed of trust the house and lot belonging to her became liable as a surety would have been for the payment of the debt of her husband evidenced by the notes. Anything which would have operated to discharge a person who was a surety for Bray might have executed the note, would operate as a release of the lien created on the house and lot because of the execution by her of the deed of trust. Wofford v. Unger, 55 Tex. 483; Angel v. Miller, 16 Tex. Civ. App. 679, 39 S. W. 1092. It is well settled that "when the obligation of a surety," quoting from 1 Brandt on Suretyship and Guaranty, § 376, "is for the debt of the principal, if the time of payment is without the consent of the surety, by a binding agreement between the creditor and principal, extended for a definite time, the surety is discharged." "The reason is," Mr. Brandt adds, "that the surety is bound only by the terms of his written contract, and if those are varied without his consent it is no longer his contract, and he is not bound by it." It is also well settled that the payment in advance of interest to become due on a debt is a sufficient consideration to support an agreement for an extension of the time of payment thereof. 1 Brandt on Suretyship and Guaranty, §§ 386, 394. The trial court being of the opinion, evidently, that the testimony showed conclusively that Bray and appellant, without Mrs. Bray's consent, on July 7, 1908, had bound themselves by an agreement whereby the latter undertook to extend the time of pay-

---

ment of the notes to October 1, 1908, in consideration of the payment to it in advance by the former of the interest which would accrue to said October 1, 1908, on the indebtedness evidenced by the notes, peremptorily instructed the jury to return a verdict in favor of Mrs. Bray.

It is insisted that such instruction was error, first, because there was testimony tending to show that Mrs. Bray had consented that the extension so agreed upon might be made; and, second, because there was evidence tending to show that appellant was induced to enter into the agreement in reliance upon false and fraudulent representations made to it by Bray, and therefore did not become bound by the agreement. In Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, the Supreme Court said: "From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more." Continuing, the court said, quoting from the opinion of the court in Ryder v. Wombwell, L. R. 4 Exch. 32: "There is, no doubt, a possibility, in all cases where the judges have to determine whether there is evidence on which the jury may reasonably find a fact, that the judges may differ in opinion, and it is possible that the majority may be wrong. Indeed, whenever a decision of the court below on such a point is reversed, the majority must have been so either in the court above or the court below. This is an infirmity which must affect all tribunals."

As we understand the record, the law being that the husband has no presumptive authority to act for his wife in consenting to an extension of a mortgage given by her to secure his debt (1 Jones on Mort. § 115; Wofford v. Unger, 55 Tex. 484), there was no evidence tending to show that Mrs. Bray consented to the extension agreed upon. As to the testimony offered to prove that appellant was induced to enter into the agreement as the result of fraud practiced upon it by Bray, and therefore did not become bound by its

undertaking, we are inclined to think it was more than sufficient to create a mere surmise or suspicion that a fraud may have been practiced by Bray upon appellant. The testimony may be said to have tended to show that Bray represented to appellant, in the correspondence resulting in the agreement, that Bray Bros. Company recognized the debt as their own, and that, while said Bray Bros. Company were unable then, on account of a panic prevailing in the money market, to pay the debt, they owned assets which would enable them to pay, and they would pay, the notes at the expiration of the time to be covered by the extension he asked for; that such representation was made by Bray to induce appellant to grant the extension, and, within Bray's knowledge, may have been false; that Mrs. Bray may have known he was endeavoring to secure the extension; that Bray may have known that if appellant bound itself by an agreement with him, without Mrs. Bray's consent, to extend the time for the payment of the debt to October 1, 1908, Mrs. Bray's property thereby would be released, and may have intended to accomplish a release thereof by inducing appellant to so bind itself; that appellant knew if it so bound itself without Mrs. Bray's consent her property, as a consequence, would be released from liability for the debt, but did not know that Mrs. Bray had not consented to the extension agreed upon; that had appellant known that Mrs. Bray had not consented to the extension it would not have entered into the agreement with Bray; and that appellant did not know until after the expiration of the time covering the extension agreed upon that Mrs. Bray had not consented to same. If, to induce appellant to enter into the agreement, Bray represented to it that the firm of Bray Bros. Company, of which he was a member, recognized and would pay as its own the debt evidenced by the notes, and that the firm then had assets sufficient to enable it to satisfy all of its obligations, and if such representations were false, and if appellant because it relied upon same being true entered into the agreement referred to, we are inclined to think, in a contest between itself and Bray, it should be heard to say that it was entitled to avoid the effect of its agreement; because, we think the representation that Bray Bros. Company had assets sufficient to satisfy their obligations, including Bray's debt to appellant, which they would assume and pay as their own, would be a representation of a fact material to the undertaking which appellant was asked to enter into. Bray's financial condition was a matter appellant naturally would take into consideration in determining whether it would grant the extension or not. As he was a member of the firm of Bray Bros. Company, a representation as to assets owned by the firm was a representation as to a fact which necessarily affected his own financial condition. For his property subject to execution was liable for the firm's debts, and its property to the extent of his interest therein was

liable for his debts. It has often been held that "a person's representations as to his solvency and credit, if made as a fact, and intended to induce the other party to extend credit," if false, may be such a misrepresentation as will entitle a person to avoid a contract he has been induced thereby to enter into. 14 A. & E. Ency. Law, 134; Aultman, Miller & Co. v. Carr, 16 Tex. Civ. App. 430, 42 S. W. 614; Boaz v. Mfg. Co., 40 S. W. 866; Schram v. Strouse, 28 S. W. 262; Morrison v. Adoue, 76 Tex. 255, 13 S. W. 166.

But while we think the evidence may have been sufficient, had the controversy been between Bray and appellant, to have made an issue for the jury as to the latter's right to rescind the contract, we do not think the trial court erred in the instruction complained of, when same is considered with reference to Mrs. Bray's rights. A surety has a right at any time after the maturity of the debt to pay it, and to proceed against the principal for indemnity. Benson v. Phipps, 87 Tex. 579, 29 S. W. 1061, 47 Am. St. Rep. 128. The right is an absolute one. It does not depend upon the consent of the principal and the creditor or of either of them. The effect of the agreement for the extension between Bray and appellant would have been to deprive a surety for Bray of this right. For the agreement between Bray and appellant, though it may have been induced by the fraud of the former, was not void in the sense that a stranger to it would have been entitled to disregard it. Anderson v. Roberts, 18 Johns. (N. Y.) 515, 9 Am. Dec. 239. As between Bray and appellant the agreement at most was merely voidable at the instance of appellant. It was binding on Bray. Appellant might have refused to permit a surety to pay the debt after it had matured according to the terms of his contract, on the ground that by the terms of the agreement for an extension it had not matured. For, while it may have had a right to rescind the agreement because voidable as to it (24 Am. & Eng. Ency. Law, 609), it unquestionably had a right to treat it as valid. So, to hold that the surety would not be discharged, would be to say that his rights as such were dependent on whether the creditor elected to rescind such an agreement or treat it as valid. We do not think a surety's right in such a case should be so measured. It should not be made to depend on the will of the creditor. The "binding agreement" for an extension which will operate to discharge the surety, we think may be one which at the option of one of the parties is binding on both, as well as one which is absolutely binding on both. The record before us very well illustrates the necessity for such a holding to protect the surety in his rights in such a case, unless it should be said that Mrs. Bray's property was released because appellant had elected to affirm as valid and binding on it the agreement it had entered into. The representation as to the financial condition of Bray Bros. Company, which it is claimed induced appellant to agree to the extension, was made in a letter written by Bray May 30, 1908. The agreement for an extension to October 1, 1908, was made July 7, 1908. Bray Bros. Company were adjudged to be bankrupts July 23, 1908. No question as to the binding force of the agreement was made until after the expiration of the time covered by the extension. So it appears that from July 23, 1908, when appellant, it may be assumed, became fully advised as to the financial condition of Bray Bros. Company and the falsity of the representation made to it, until October 1, 1908, when the time of the extension expired, appellant, with knowledge of the truth as to Bray Bros. Company's financial condition, treated the agreement as a valid one. During all this time, as well as during the time intervening between the date of the agreement and the bankruptcy proceedings against Bray Bros. Company, if the agreement for an extension, to release a surety, must have been an absolutely binding one, the creditor was in a position to await events before electing whether he would rescind or affirm, and the right of the surety to pay the debt in accordance with his contract and demand indemnity of his principal was in abeyance, and subject to be wholly defeated by the election of the creditor, finally made, to rescind the agreement.

We think the court erred in dismissing appellant's cross-bill and in refusing to adjudge a recovery in its favor against Bray for the sum unpaid on the notes as prayed for in said cross-bill. It was shown that Bray on February 9, 1909, had filed his petition to be adjudged a bankrupt, but there were no pleadings on his part setting up the fact. We do not understand that a state court should take notice of bankruptcy proceedings pending in another court, in the absence of pleadings invoking its action. Miller v. Clements, 54 Tex. 354; Coffee v. Ball, 49 Tex. 25; Feigenspan v. McDonell, 201 Mass. 341, 87 N. E. 624; McGowan v. Bowman, 79 Vt. 295, 64 Atl. 1121. The judgment in this respect will be reversed, and a judgment will be here rendered in favor of appellant against Bray for the sum due on the notes according to their legal effect. In all other respects, the judgment will be affirmed.