## MARYLAND CASUALTY CO. v. MEYER.

### No. 3562.

Court of Civil Appeals of Texas. Amarillo.
June 24, 1931.

Rehearing Denied July 11, 1931.

Dorenfield, Foster & Fullingim, of Amarillo, for appellant.

Harney & Buckley, of Borger, for appellee.

JACKSON, J.

The appellee instituted this suit in the district court of Gray county, Tex., against the appellant, the Maryland Casualty Company, to cancel and vacate, because of the alleged fraud of appellant, an agreed settlement for compensation entered into by appellee as an injured employee of the Western Carbon Company and appellant as compensation insurer of the employees of said Carbon Company.

The appellee alleged that on the 22d day of December, 1928, while an employee of the Western Carbon Company and in the course of such employment, he fell into a ditch about ten feet deep, which bruised his body, injured his spinal column, strained the muscles, ligaments, tissues, and tendons in his back, and that he sustained a double hernia. That at the time of such injuries he was earning a daily wage of $4 and had been earning such sum for substantially the whole of the year immediately preceding his injury. That his average weekly wage amounted to $23.07; that 60 per cent. of his average weekly wage is $13.84. That because of such injuries, his speech is impaired, he is unable to perform the duties required of him as a laborer, and is permanently and totally disabled, by reason of which the appellant became indebted to him for 401 weeks at 60 per cent. of his average daily wage, or a total of $5,540.64.

That, immediately after his injury, the appellant secured accommodations for him in the hospital owned and operated by Drs. McKean and Conner in the city of Pampa, Tex. That he remained in said hospital until about the 25th day of April, 1929. That appellant paid all expenses in connection with his treatment. That Drs. McKean and Conner are competent physicians and knew or should have known the exact physical condition of appellee. That said physicians, who are the agents of appellant, fraudulently represented to appellee that the only injury he had sustained was a double hernia; that an operation would correct such injury and that he would suffer no further inconvenience or pain and would be able to labor and earn money as he had previously done. That he submitted to such operation. That he was ignorant of his rights and in a weak physical condition. That he did not know that Drs. McKean and Conner were the agents of appellant, but had implicit confidence in their advice, and while in the hospital in such weakened condition, after they had represented to him that an operation would correct his injuries, and that he would be able to work and pursue his employment as theretofore, he relied on such representations and was induced thereby to enter into an agreed settlement, by the terms of which he accepted the sum of $75 in full settlement and satisfaction of his claim against appellant for compensation. That the $75 mentioned in the compromise agreement was represented to be compensation for a period of one month only, and that he would receive $75 per month for five additional months and

two weeks. That said physicians knew of appellee's mental and physical condition and fraudulently induced and coerced him into signing said release and accepting such settlement for his compensation. That thereafter, without the knowledge of the appellee, such release and settlement was submitted to and approved by the Industrial Accident Board of the state of Texas. That the acts, conduct, and representations of said agents of the appellant were made for the purpose of overreaching appellee and fraudulently securing such release and discharge of appellant from further liability. That he but recently ascertained that such representations were false, and that said physicians knew at the time they were made that plaintiff was permanently and totally disabled.

That, because of such fraudulent representations, appellee has instituted this suit to set aside such purported settlement agreement and to secure an order directing the Industrial Accident Board to hear plaintiff's claim upon its merits, so he may prosecute such claim to a final award.

The defendant answered by general demurrer, numerous special exceptions, and general denial.

On the findings of the jury on the special issues submitting fraud, the court set aside as null and void the compromise agreement and ordered the clerk to forward to the Industrial Accident Board of Texas a certified copy of the judgment to advise such board of the action of the court. From which judgment this appeal is prosecuted.

The appellant, because of the insufficiency of the amount involved in the compromise settlement, as alleged, challenges the jurisdiction of the district court to hear the case and cancel, set aside, and hold said compromise settlement null and void.

The record discloses that on December 22, 1928, the appellee was employed by the Western Carbon Company, which carried insurance to protect its employees with appellant; that appellee was receiving $4 per day for his services for seven days a week; that, while engaged in the services of his employer, he was accidentally injured. That on December 27th thereafter he was placed in the McKean and Conner hospital at Pampa, Tex., where he was treated at the expense of appellant; that about two weeks after he entered the hospital appellee was advised by Dr. McKean that an operation would relieve his back and his hernia. That about six weeks after he entered the hospital he was operated on, his hernia relieved, and after he left the hospital it became entirely well. That the doctor advised him that the pain in his back would gradually go away after the operation. That this was all the statement made to him before the operation. That after the operation, the doctor told him that he would not be able to do heavy work for six months, but could do light work earlier. That he knew his back was hurting, and the doctor did also. That the doctor did not conceal anything about his condition or his back hurting, as he knew there was something wrong with his back. That when he was discharged from the hospital the doctor told him he was in good physical condition and he could do light work. That this was the only time the doctor concealed anything about his physical condition. That after he left the hospital his hernia got well. That after he was discharged, he worked seven days for the Western Carbon Company, made $4 per day, the same amount he had theretofore received, and quit because he and other men were laid off. That he secured a position with another carbon company at the same wages and worked about a month. That while he was in the hospital, Dr. McKean furnished him with a law book and he had read that he would receive wages for twenty-six weeks for his hernia, and that he thought he was getting that amount when he signed the compromise agreement. That when he left the hospital his throat was affected, but he did not have the nervousness and jerking and twitching until after he went to work again after he was discharged and was not so afflicted at any time when he had conversations with Dr. McKean. That on February 20, 1929, he entered into the compromise agreement subject to the approval of the Industrial Accident Board of the state. That appellee, on May 10th, after having been discharged from the hospital on May 3d, accepted a payment in settlement for his compensation, a check from the insurer for the sum of $75. That he went from Amarillo to Kingsmill to receive his check. That at the time he received his check he signed the release and was advised by the superintendent of the Western Carbon Company that he would not be paid any more, and on May 17th thereafter he employed counsel to represent him and secure such compensation as he was entitled to under the compensation law.

In our original opinion, we sustained appellant's contention that the district court was without jurisdiction to cancel and vacate the alleged fraudulent compromise agreement, for the reason that, under such agreement and appellee's allegations, the greatest amount involved in said agreement was $487.50. We based this holding on the doctrine that, in order to entertain a suit for cancellation and rescission of a written instrument, the authority of the court is dependent on its possessing jurisdiction of both of the parties and the subject-matter involved. 4 R. C. L. page 489; 7 Tex. Jur. 887; Crawford v. Sandridge, 75 Tex. 383, 12 S. W. 853; Jesse French Piano & Organ Co. v. Clay, 40 Tex. Civ. App. 638, 90 S. W. 682; Hollis v. Finks, 34 Tex. Civ. App.

12, 78 S. W. 555; Mixan v. Grove, 59 Tex. 573; Cleckler v. American Motors Finance Co. (Tex. Civ. App.) 24 S.W.(2d) 514.

On further consideration we have concluded that the opinion by the Commission of Appeals in Lumbermen's Reciprocal Association v. Henderson, 15 S.W.(2d) 565, affirmatively approved by the Supreme Court, settles the question of jurisdiction against appellant's contention and our holding in the original opinion.

In the Henderson Case he claimed that, after he had been paid $391.88, he was fraudulently induced by the insurer to execute what purported to be a compromise settlement, by the terms of which he was to be paid $111.38. This settlement was approved by the Industrial Accident Board, and thereafter Henderson made application to the board to cancel the alleged fraudulent settlement and award him compensation for his injuries under the Workmen's Compensation Law (Vernon's Ann. Civ. St. arts. 8306–8309). The board ruled against him, and he sued in the district court to cancel and set aside the alleged fraudulent agreement and the ruling of the board thereon, and to recover the compensation allowed under the compensation statutes of this state. The district court canceled the compromise settlement for fraud, set aside the action of the board, and rendered judgment for Henderson for compensation. This action of the district court was affirmed by the Court of Civil Appeals, 1 S.W.(2d) 646. A writ of error was granted, and the Supreme Court held that the district court was without jurisdiction to render judgment in favor of Henderson for compensation, because the record failed to disclose that the Industrial Accident Board had passed on the merits of his claim. However, the Supreme Court did hold that the district court had jurisdiction to cancel the compromise settlement for fraud, and the sum specified in the compromise settlement was but $111.38. Manifestly this amount was not the basis of jurisdiction, as fundamental error apparent of record would have been presented, of which the Supreme Court would have taken cognizance. In the instant case, the appellee did not sue to recover any sum of money on account of the alleged fraudulent settlement or on account of his alleged injuries, but simply sought to have the alleged fraudulent settlement canceled so as to leave him free to file his claim for compensation and secure the ruling of the Industrial Accident Board on the merits of his claim. Under his allegations he had been deprived of that right by fraud and the value of such right, measured by the allegation of his injuries, the permanency thereof, the wages he received, and the amount he was entitled to recover under the Compensation Law, is sufficient to give jurisdiction to the district court.

■■ W. W. Meyer, the appellee, having failed to present to the Industrial Accident Board his claim for compensation, and the merits of such claim never having been passed on by said board, the district court had no jurisdiction of his claim for compensation. But if his allegations and proof as to his injuries, the extent thereof, and his wages, are true, the amount involved was the difference in the amount he was entitled to under the Compensation Law and what he had received under the alleged fraudulent settlement. Lumbermen's Reciprocal Association v. Henderson, supra; Texas Indemnity Ins. Co. v. Davis (Tex. Civ. App.) 32 S.W.(2d) 240; 15 C. J. 753, § 52.

■ The appellant's assignment assailing the sufficiency of the testimony to support the finding of the jury that, at the time the appellee signed the compromise agreement, the appellant fraudulently and falsely represented to him or concealed from him his true physical condition as it then existed, must be sustained. The compromise settlement, according to the record, was signed February 20, 1929. The appellee testified that the only time Dr. McKean concealed from him anything relative to his physical condition was on May 3d, when he was discharged from the hospital, and at that time the doctor advised him that he would not be able to do heavy work for six months, but could do light work. The testimony shows that appellee entirely recovered from the effects of the double hernia, and that the nervous jerking, twitching and involuntary tremor of his muscles developed after he was discharged from the hospital and had returned to work. The testimony is wholly insufficient to show that the doctor made any representations relative to appellant's liability or nonliability to appellee for his injuries, or that any representation was made to him regarding the amount he could or could not recover. That when the compromise agreement was presented to appellee, it provided for the payment of $50. That appellee objected to this amount, and the sum was changed to $75 by the doctor, and thereafter was signed and accepted by appellee without any advice, suggestion, or representation having been made to him. That no one, except Dr. McKean, ever talked to appellee about the compromise settlement. The testimony tends to show that appellee's physical condition could have resulted from the injuries he received, but it does not show that such results usually and ordinarily follow such injuries. It is not sufficient to show that the doctor knew such results would follow, or by the exercise of proper care should have known it.

■ The record discloses that testimony was offered, over the objection of the appellant, showing that appellee's condition had changed since the compromise settlement and after he had been discharged from the hospital. In order for such testimony to be admissible, it

should be made to appear that the doctor knew, or should have known, that the representations made were untrue.

The appellee relied solely on his allegations of fraud, not pleading either accident or mistake.

"Under the Workmen's Compensation Act a compromise settlement made between an injured man and the compensation insurance company duly approved by the Industrial Accident Board, the money being paid, constitutes a bar to any further claim on his part for compensation, in the absence of the showing of fraud, accident or mistake and where such claim has been duly compromised and settled, with the approval of the Board, the injured claimant is not entitled to recover additional compensation on the sole ground of a showing of a change in his condition after the compromise settlement." Lumbermen's Reciprocal Association v. Day (Tex. Com. App.) 17 S.W.(2d) 1043, 1044.

The motion for rehearing is granted, the original opinion is withdrawn, and the judgment of the trial court is reversed, and the cause remanded.