MORRISON, HERRIMAN & CO. v. ADOUE & LOBIT ET AL.

No. 2722.

1. **Fraudulently Buying Goods.**—A seller who is induced to sell by a false statement of a material fact or of facts made by the buyer is entitled to avoid the sale in all cases in which the false statement is made with knowledge of its falsity by the person making it.

2. **Same—Misrepresentations.**—A false statement made by a buyer who has full opportunity to know whether it is true or not in reference to a material fact, although it may not be actually known by him to be false, also furnishes ground for avoidance of the sale if it be made when he has no reason to believe it to be true.

**3. Statements Made to Obtain Credit.**—In making a statement to obtain credit, the partner making it ought not to be heard to say that he was ignorant as to the condition of the firm business, for it is his duty to know, and to make no statement not substantially correct when he knew that the seller was to be influenced by it.

**4. Fact Case.**—See facts held to show a misrepresentation as to amount of both assets and liablities *held* material.

**5. Bona Fide Purchasers.**—A failing mercantile firm transferred its stock to certain of its creditors in payment of their claims. *Held,* that such vendees took subject to the condition of the stock or any part of it to be reclaimed by another creditor from whom it had been obtained by fraud.

**6. Wrongdoers—Presumptions.**—While the purchasers of the stock of the firm whose purchases are attacked for fraud would only be responsible for the goods actually received by them of the stock sought to be reclaimed, still, after demand had been made and refused, it seems that such vendees would be required to show that the goods in controversy or part thereof did not in fact come into their hands, in order to defeat a recovery for the value of the entire bill of goods.

ERROR from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Wm. B. Lockhart,* for plaintiffs in error. —1. Whenever goods are obtained from their owner by fraud, even though it be intended to transfer both the property in and the possession of the goods to the person guilty of the fraud, the contract is voidable at the election of the vendor, and he can recover the goods or their value from his fraudulent vendee. Rohrbough v. Leopold, 68 Texas, 254; Albright v. Corley, 40 Texas, 105; Newell v. Randall, 32 Minn., 171; Benj. on Sales, secs. 517, 518, and notes; Newm. on Sales, sec. 360, and authorities cited; 2 Pome. Eq. Jur., sec. 906.

2. Any one holding under a vendee who has obtained goods by fraudulent representations as to his solvency is in no better position than the vendee, unless he is a bona fide purchaser for a valuable consideration from the vendee. Rohrbough v. Leopold, 68 Texas, 258.

3. One who buys at a voluntary sale from his debtor and pays no money, but credits the amount of the consideration by the extinguishment of a pre-existing debt, is not a bona fide purchaser for value. Overstreet v. Manning, 67 Texas, 661; McKamey v. Thorp, 61 Texas, 648, 653.

4. Plaintiffs having shown the delivery of the goods in question to Nordholtz & Co., and the sale by them of their stock, including plaintiffs' goods, to defendants; that defendants took an inventory of the stock immediately after the sale, excluding from the store all interested parties except themselves; and that they, the plaintiffs, made demand for their goods upon the defendants before they (defendants) had disposed of any of the stock received from Nordholtz & Co., which demand defendants refused, the burden of proof was upon defendants to show what part, if any, of plaintiffs' goods had been disposed of by Nordholtz & Co. while they kept their store open after the receipt of the goods sold them by

plaintiffs, and in the absence of such proof the court will not presume that any part of the goods were sold.   Steph. Dig. of Ev., art. 95, note 3, and authorities cited.

5.   Under the uncontradicted evidence proved on the trial of this cause, and the law arising thereon, the court erred in not giving judgment in favor of plaintiffs against defendants for the value of said goods, to-wit, $1027.63, less $48.48, the value of those stopped by plantiffs in transit.   Rohrbough v. Leopold, 68 Texas, 258; Overstreet v. Manning, 67 Texas, 661; McKamey v. Thorp, 61 Texas, 648, 653.

*McLemore & Campbell* and *G. E. Mann,* for defendants in error.— 1. There was ample evidence to support the finding of fact by the court trying the case without a jury, that there was no fraud on part of Nordholtz & Co. in their purchase of the goods from appellants.   Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 1; Craig & Ogden v. Marx & Kempner, 65 Texas, 654.

2.   The appellants' proposition is hypothetical, in that appellees did not simply credit value of the goods, but bought the goods of value less than fifty per cent of their claims and extinguished their full claims, and thereby became purchasers for value.   Alstin v. Cundiff, 52 Texas, 463.

3.   Nordholtz & Co. had old goods bought of appellants as well as the last bill in their stock, and had been selling at retail for between two and three weeks after receipt of last bill, and it was not shown that it would have been possible to ascertain what goods last bought of Morrison, Herriman & Co. remained unsold, if appellants had proved fraud, and that appellees were not purchasers for value.

STAYTON, CHIEF JUSTICE.—On August 23, 1887, appellants, merchants doing business in the city of New York, sold goods to G. W. Nordholtz & Co., a firm doing business in this city, who about September 1 placed the goods bought on credit among their general stock, from which they sold in ordinary course of trade until about September 19, when they sold their entire stock to the many defendants in settlement of debts for the most part due when the goods were bought from appelpellants.

After the sale was made by Nordholtz & Co. appellants demanded the goods sold by them before appellees had disposed of them, claiming the right to avoid the sale on the ground that Nordholtz & Co. had induced them to sell the goods by fraudulent statements as to the assets and liabilities of that firm.

Appellees refused to deliver the goods, and this action was brought against them to recover, as for the conversion, the petition setting out the goods on which appellants claimed the right to avoid the sale.

The statement on account of which the sale was made and credit given was as follows:

"N. Y., 8—23rd, 1887.

"The following statement is made by me to Morrison, Herriman & Co. as a basis of credit on this and all future purchases by

"Name, G. W. Nordholtz & Co.

"Residence, Galveston, Texas.

"ASSETS.

"Aug. 5th, '87.

| | |
|---|---:|
| Stock at value............................................ | $38,987 42 |
| Outstanding accounts, good............................... | 4,972 45 |
| Cash in hand and in bank................................. | 385 00 |
| | |
| Total.................................................... | $44,344 87 |

"LIABILITIES.

| | | |
|---|---:|---:|
| Owe for mdse. on open account, ⎫ <br> Owe for mdse. settled by note, ⎬ .......... | $4,750 26 | |
| Borrowed money........................... | 10,180 00 | |
| Other debts, bank......................... | 3,000 00 | —$17,930 26 |
| | | |
| Surplus ................................................. | | $26,414 61 |

"Indebtedness past due, none.

"Indebtedness extended, part of Claflin's account, say $1500.

"Insured for $30,000.

"Sales for cash, ⎫ <br> "Sales for credit, ⎬ $55,000.

"Rent, $2400.

"Other expenses, reduced considerably from last year, ab't.

"Buying altogether 5 / 6000.

[Signature]                    "G. W. NORDHOLTZ & Co."

It is shown that goods sold from the entire stock of Nordholtz & Co., from the time of the purchase in question until the transfer to appellees, amounted to about $5000. After the transfer was made an inventory was taken by appellees, or under their direction, in the taking of which neither member of the firm of Nordholtz & Co. was permitted to be present or to participate. That inventory showed stock on hand not exceeding $32,000 in value.

But three witnesses testified, and only two of them knew anything about the value of the stock when statement was made by Nordholtz & Co., or when transferred to appellee. G. W. Nordholtz stated: "When I left Galveston for New York in 1887 the stock of G. W. Nordholtz & Co. was worth about as much as was shown by statement, viz., $38,987.42, and the other items given in the statement were approximately correct at the time as given."

He, however, admitted an indebtedness of $21,000 existing before he went to New York, and at the time he made the statement, and it was conceded by defendants that a further indebtedness, which he denied, amounting to $2550.46, then existed.

The other member of the firm of Nordholtz & Co. testified as follows: "I was the partner of G. W. Nordholtz in the firm of G. W. Nordholtz & Co., and am executor without bond of the estate of Ferdinand Emme, deceased. Nordholtz did the buying for the firm, and for that purpose went to New York in 1887, while I remained in the store. No account of stock was taken before Nordholtz's departure for New York in August, 1887, and none had been taken since January 1 of that year. When Nordholtz left for New York in August, 1887, the stock on hand was not worth more than $22,000 or $23,000. Very few goods had been bought by the firm for a year prior to August, 1887, as business had not been good, and I had done all I could to restrain Nordholtz from incurring new obligations for the firm. I had told him that we must stop buying except as should be absolutely necessary, and that when we did buy it should only be from home people, and in small quantities at a time. Previous to and while Nordholtz was in New York, in August, 1887, the sales were very light. The year had been a very bad one, and sales light, particularly in July, August, and September, which are always dull months. At the time Nordholtz went to New York in August, 1887, the firm was indebted to Albert Sundt $2600 of the $3005.40 owing to him at the date of the transfer to defendants, viz., September 19, 1888; to Mrs. Ernestine Schulte, $1500; to Texas Banking and Insurance Company, $500; to Ball, Hutchings & Co., $600 (which was, as was also the debt to the Texas Banking and Insurance Company, a renewal of a pre-existing debt); to H. Miller, $1700; to L. & H. Blum, at least $600; to P. J. Willis & Bro., at least $773; to Adoue & Lobit, at least $3000; to the estate of Ferdinand Emme, $12,000, including principal and interest; to Charnock & Co., $800; and to Mrs. Wright, $5000. While gone in 1887 Nordholtz bought between $8000 and $9000 worth of goods, which were received in stock by Nordholtz & Co. on about September 1, 1887. The statement made by Nordholtz, August 23, 1887, which is attached to the deposition of E. M. Post in this case, is greatly exaggerated. The value of the stock as stated therein is greatly above what its true value was. The indebtedness of the firm is underestimated, and of the outstanding accounts, stated to be $4900, all of which was asserted in the statement to have been good, not more than fifty cents on the dollar could have been collected. I assisted in taking the inventory of stock after the transfer for three days, when objection was made by the defendants to my being present, and I was excluded from the store. The inventory was taken at invoice prices while I was there, and when I saw it, two or three days after its completion, footed up $31,000 or $32,000."

Cross-examined the witness said: "The debt of the firm to the Emme estate amounted to $12,000 at the time Nordholtz went to New York. My statements as to amounts of our indebtedness, amount of stock, and other figures are my recollection and belief. I was familiar with the stock and indebtedness of the firm, and had entire charge of the business while Nordholtz was gone."

From the evidence it will be seen that the indebtedness of the firm at the time statement was made was largely in excess of sum stated; and while Nordholtz did not state all the indebtedness, he did not question the accuracy of his partner's statement, which showed an indebtedness exceeding $28,000. If the statement of the other partner is correct, the statement of assets made to appellants was largely in excess of all owned by the firm, and the inventory made by appellees, or under their direction, tends to corroborate the testimony of that witness.

As Nordholtz and partner were not permitted to be present and to participate in making inventory of stock at time appellees bought, the latter can not well question its accuracy.

When we take into consideration the fact that Nordholtz bought $8000 or $9000 worth of goods while in New York, at the time he bought from appellants, and that those goods went into the stock bought by appellees, it is evident that the statement of stock on hand August 23 was excessive.

If we add to the amount then stated $8000, we have $46,987.42, from which, if we deduct $5000 on account of sales, there ought to have been on hand when appellees bought $41,987.42, when in fact, from inventory taken when appellees bought, there was not more than $32,000 in stock on hand.

These facts show that the statement as to assets and liabilities was incorrect, and both so in the direction to obtain credit.

In making a statement for such a purpose the partner making it ought not to be heard to say that he was ignorant as to the condition of the firm business, for it was his duty to know, and to make no statement not substantially correct, when he knew that the seller was to be influenced by it.

The evidence shows that early in 1887 appellants had refused to fill an order made by Nordholtz & Co., because the business up to that time had not been statisfactory, but that the firm afterwards paid sum due, when appellants determined not to reopen an account, but were induced to do so by the favorable statement made August 23, 1887.

The cause was tried without a jury, and we have not the benefit of the judge's conclusions of fact and law.

Appellees answered by demurrers and by general denial, and did not plead that they were innocent purchasers, though in their brief it is suggested that under the facts proved such is their character.

It is well settled that a seller who is induced to sell by a false statement of material fact or facts made by the buyer, is entitled to avoid the

sale in all cases in which the false statement is made with knowledge of its falsity by the person making it.

A false statement made by a buyer who has full opportunity to know whether it is true or not, in reference to a material fact, although it may not be actually known by him to be false, also furnishes ground for avoidance of the sale if it be made when he has no reason to believe it to be true.

In the case before us it is shown that the person who made the representations which induced appellants to sell, was an active partner in the purchasing firm, and that by use of the means within his reach he could and ought to have known that his statements were not substantially true. A person so situated ought not to be heard to say that he does not know what his firm owns and owes. He must be held to have made a statement as to the assets and liabilities of his firm known by him to be untrue, or to have made the statement recklessly, without making that inquiry which good faith required he should make before making a statement intended to influence and which he knew would influence the sellers.

In either case appellants were entitled to avoid the sale so long as the goods sold were in the hands of the purchasing firm, or in the hands of any person not a bona fide purchaser.

Appellees having purchased solely in payment of existing debts, can not claim to be such purchasers, although they may have known nothing of the untrue statements which induced appellants to sell to Nordholtz & Co.

Appellees having refused to deliver the goods sold by appellants to Nordholtz & Co., although demanded before they had disposed of any of them, it is the right of the latter to recover their value; but as the case is presented this court can not, with certainty of doing justice, render a judgment.

Appellees are liable only for the value of such goods sold by appellants as were received by them, and in the absence of evidence showing what part of the goods they did receive, or that this can not now be accurately ascertained, resort should not be had to presumptions which may be drawn from facts proved.

What goods appellants sold to Nordholtz & Co. is shown, and their value may, no doubt, be established with reasonable accuracy. It is, however, rendered probable that some of the goods may have been sold in ordinary course of business, before the sale to appellees. If so, appellees have or ought to have it in their power to show what was sold by showing what they received, for they received all that had not been sold before their purchase.

At the time appellees were notified of appellants' election, to avoid the sale they still held the goods, and their refusal to deliver them made them wrongdoers — against whom, in the absence of direct evidence, much ought to be presumed.

When demand was made they became aware of the right of appellants, and then had it in their power to ascertain with accuracy, so far as the record shows, what goods belonging to appellants they held.

It seems to us that it then became their duty to ascertain that fact, and if they failed to do so and sold the goods to other persons, thereby depriving appellants of the power to show what goods came into their hands, then they ought to be held liable for the value of all the goods sold by appellants to Nordholtz & Co.

The burden of proof ought to rest on appellees to show what goods they received; and, as the case now appears from the record, if they fail to do this, judgment ought to be rendered against them for the full value of the goods sold to their vendors by appellants. Preston v. Lighton, 6 Md., 97; Whart. Law of Ev., 1265, 1266; 1 Greenl. Ev., 37.

The judgment will be reversed and the cause remanded, that both parties may have opportunity so to present the case that justice between them may be done.

*Reversed and remanded.*

Delivered February 18, 1890.