### COMMERCIAL CASUALTY INS. CO. v. HILTON.
#### No. 7792.

Court of Civil Appeals of Texas. Austin.
Nov. 10, 1932.

Rehearing Denied Nov. 23, 1932.

Harris, Harris & Sedberry, of San Angelo, and Collins & Houston, of Dallas, for appellant.

Kerr & Gayer, of San Angelo, for appellee.

BLAIR, J.

Appellee filed this suit as an appeal from the action of the Industrial Accident Board, refusing to set aside a compromise settlement of his compensation claim, which the board had approved, but which was alleged to have been obtained by mistake or fraud as to the condition of appellee's injuries when made; and refusing to award appellee such compensation as he might show himself entitled to receive. The trial resulted in setting aside the compromise agreement for fraud, and in a lump judgment for $2,545.57 as compensation, and $5,000 for medical and hospital services in favor of appellee.

The compromise settlement of the claim for compensation was executed and approved by the board in the manner provided by section 12 of article 8307. The order of the board refusing to set aside this agreement and the order approving it for fraud, and to reopen the case and award appellee the compensation to which he showed himself entitled to receive, omitting formal parts, reads as follows:

"The application of the claimant herein to reopen this case and set aside the order of the Board made and entered June 23, 1931, approving a compromise settlement agreement which motion was received and filed in this office July 29, 1931 (see page 74) has been duly considered by the Board.

"Under the decisions of the Supreme Court in the cases of Lumbermen's Reciprocal Association v. Henderson [15 S.W.(2d) 565], and Lumbermen's Reciprocal Association v. Day [17 S.W.(2d) 1043] we do not think we have jurisdiction to pass upon questions raised in said application, and for that reason we have today declined to set the application down for hearing."

Appellee filed timely notice of intention not to abide by the order refusing to set aside the fraudulent compromise agreement, and refusing to reopen his case and award such compensation as he might show himself entitled to receive; and timely filed this suit as an appeal from such action of the board, as provided in the Workmen's Compensation Act, the petition alleging appellee's injuries to be the same as stated in his application to the board for compensation; and alleging fully the facts showing mistake or fraud inducing the settlement agreement.

Appellant admits that the courts acquired jurisdiction to pass upon the question of whether the compromise settlement was induced by mistake or fraud; but contends that the courts acquired no jurisdiction to adjudicate appellee's claim for compensation and for medical and hospital services, (a) because the Industrial Accident Board had no power or authority to pass upon the mistake or fraud issue, it being judicial; and that no award could be made by the board until the fraud issue had been determined by a court of competent jurisdiction in favor of appellee; and (b) because the board, as shown by its above-quoted order, had not exercised its jurisdiction to hear and determine such matters upon their merits; and had made no final appealable award thereon, citing the following cases as supporting these contentions: Lumbermen's Reciprocal Ass'n v. Wilmoth et al. (Tex. Com. App.) 12 S.W.(2d) 972; Texas Employers' Ins. Ass'n v. Hoehn (Tex. Civ. App.) 20 S.W.(2d) 263; Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084; Georgia Casualty Co. v. Campbell (Tex. Civ. App.) 266 S. W. 854; Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Lumbermen's Reciprocal Ass'n v. Day (Tex. Com. App.) 17 S.W.(2d) 1043; Lumbermen's Reciprocal Ass'n v. Henderson (Tex. Com. App.) 15 S.W.(2d) 565.

These contentions of appellant are not sustained. The last contention will be considered first. It is true that the jurisdiction of courts under the Workmen's Compensation Act attaches only by appeal from a final award or decision of the Industrial Accident Board, either awarding or refusing a claim for compensation or other relief authorized by the act. Lumberman's Reciprocal Ass'n v. Behnken, supra; Mingus v. Wadley, supra; Jones v. Texas Indemnity Ins. Co. (Tex. Civ. App.) 15 S.W.(2d) 1077; Texas Indemnity Co. v. White (Tex. Civ. App.) 37 S.W.(2d) 277; section 12d of article 8306, as amended by Acts 1931, 42d Leg. c. 155, p. 260 (Vernon's Ann. Civ. St. art. 8306, § 12d): and section 5 of article 8307, as amended by Acts 1931, 42d Leg. c. 224, p. 378 (Vernon's Ann. Civ. St. art. 8307, § 5). The rule is also well settled that, where a claim for compensation is refused or denied for any reason by the board, and an appeal is taken, the courts acquire jurisdiction to determine all issues between the parties relating to the injury and compensation therefor, which includes all incidental claims resulting from the injury and allowed by the act, regardless of whether such had been asserted before the board. Lumberman's Reciprocal Ass'n v. Behnken, supra; Ætna Life Ins. Co. v. Culvahouse (Tex. Civ. App.) 10 S.W.(2d) 803. And it has also been uniformly held that the Industrial Accident Board is an administrative body created for the purpose of admin-

istering the Workmen's Compensation Laws in accordance with their provisions; that it has jurisdiction over the persons and subject-matter involved; and that in the performance of its duties it exercises administrative and quasi judicial functions. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556; Vestal v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 285 S. W. 1041; Keller v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 279 S. W. 1113; Southern Casualty Co. v. Todd (Tex. Com. App.) 29 S.W.(2d) 973; Texas Employers' Ins. Ass'n v. Sewell (Tex. Civ. App.) 32 S.W.(2d) 262.

■ So in this case, if the board, in the exercise of its administrative and quasi judicial functions under the act, had the power or authority to review its previous order approving the compromise settlement agreement, and to set it aside or change or revoke it upon a showing that it had been procured by mistake or fraud, we think it manifest that the above-quoted order of the board, refusing to set aside the settlement agreement for mistake or fraud, and refusing to consider appellee's claim for such compensation as he might show himself entitled to receive, constituted a denial of the claim for compensation, giving the courts jurisdiction on this appeal. Southern Casualty Co. v. Todd (Tex. Com. App.) 29 S.W.(2d) 973; Texas Employers' Ins. Ass'n v. Rodgers (Tex. Civ. App.) 284 S. W. 968 (writ of error dismissed). Nor can it be material whether the board refused to act because of the belief that it had no authority to pass upon the question of mistake or fraud inducing the settlement agreement which it had theretofore approved. Whatever the reason for refusing appellee's application for compensation, which the order recites the board had duly considered, the refusal to act effectively closed the door of relief to him; and was a denial of his pending claim for compensation. We therefore pass to a consideration of the question of whether the board, in the performance of its administrative and quasi judicial functions, had the power or authority to review its previous order approving the settlement agreement in connection with the application of appellee to set it aside for mistake or fraud; and to award appellee the compensation to which he might show himself entitled to receive.

■■ In the recent case of Estes v. Hartford Accident & Indemnity Co. (Tex. Civ. App.) 46 S.W.(2d) 413 (writ of error refused), it was held (a) that, since section 12 of article 8307 provided for the approval by the Accident Board of the compromise settlement of the claim for compensation, an order or award of the board approving same had the force and effect of a judgment or an award of compensation; and (b) that, upon the issue being submitted within the compensation period, the settlement agreement approved by the board had been procured by mistake or fraud, the board had the authority to revoke or change its previous order of compensation based upon the settlement agreement, and to award such compensation as the injured employee showed himself entitled to receive, by virtue of the provisions of section 12d of article 8306, as amended by Acts 1931, 42d Leg. c. 155, p. 260 (Vernon's Ann. Civ. St. art. 8306, § 12d), authorizing the board "upon its own motion or upon the application of any person interested showing * * * mistake or fraud, the Board at any time within the compensation period, may review any award or order, ending, diminishing or increasing compensation previously awarded * * * or change or revoke its previous order." We have examined the application for writ of error in this case, and it, as well as all the courts passing upon the case, either assumed or specifically held that the board, under authority of the above statutes, could set aside its previous order approving a compromise agreement induced by fraud. A similar holding was made in the case of Employers' Ins. Ass'n v. Rodgers, supra. In the cases of United States Fidelity & Guaranty Co. v. Cooper (Tex. Civ. App.) 14 S.W.(2d) 342, 343; Id. (Com. App.) 29 S.W.(2d) 971; Id. (Com. App.) 33 S.W.(2d) 189; Maryland Casualty Co. v. Meyer (Tex. Civ. App.) 41 S.W.(2d) 291; Commercial Standard Ins. Co. v. Lowrie (Tex. Civ. App.) 49 S.W.(2d) 933, 937, and cases there cited, it was held in substance that, unless a claim for compensation is presented and acted upon by the board in connection with an application to set aside a compromise settlement for fraud, the courts have no jurisdiction to award compensation, but may only set aside the agreement. To the same effect is Lumbermen's Reciprocal Ass'n v. Henderson (Tex. Com. App.) 15 S.W. (2d) 565. But these cases are not directly in point here, where the claim for compensation was filed and presented and considered by the board in connection with appellee's application to set aside the order approving the compromise agreement; and the board's order recites that, although it had considered the claim for compensation, it refused to pass upon same, because the Henderson Case, supra, and the case of Lumbermen's Reciprocal Ass'n v. Day, supra, prohibited it from doing so. This last case has no application to the question, except to the extent that it holds a compromise agreement approved by the board may only be set aside for mistake or fraud inducing it. It is true that the court held in the Henderson Case that the board had no authority or jurisdiction to pass upon the question of fraud, because such was a judicial question. This case, however, makes no reference to the aforementioned statutes authorizing the board, in its administration of the Compensation Act, to review its previous order or award and to set it aside upon a showing that it had been induced by mistake

or fraud. Neither does this case, nor the cited case of Middleton v. Texas Power & Light Co., supra, attempt to pass upon the constitutionality of these statutes which clearly and explicitly confer this power upon the board. And since the board's decision on such questions is only administrative, or at least merely quasi judicial, and not final, and the trial on appeal is de novo, we see no good reason why these statutes should be declared unconstitutional as being an attempt by the Legislature to confer judicial powers upon the Accident Board. We are not unmindful in this connection that the court in refusing the writ of error in the Estes Case, supra, could have done so upon the finding that the evidence did not establish the fraud as a matter of law, and that the court had jurisdiction of the fraud issue without regard to any action of the Accident Board thereon. But, in view of the fact that writs of error have been recently refused and dismissed in cases which refer to and predicate their decisions upon the authority of the statutes in question and the practice of the board in considering the case upon its merits at the time and in connection with an application to set aside a previous order approving a compromise agreement because induced by fraud, and to award or deny compensation as it determines the fraud issue, we have reached the conclusion that such practice is not prohibited, even if it has not modified to that extent the holding in the Henderson Case.

■ It may further be observed in this connection that the courts have also uniformly held that the board had the authority, and that it was its duty, to determine in the first instance before the jurisdiction of the courts would attach, such legal or judicial questions as to whether the employee was covered by the contract of insurance; or whether the employee had received a, compensable injury in the course of his employment; or whether the employee was an independent contractor; or whether he was in law employed by an independent contractor rather than by the assured. These and many other judicial questions as far reaching as the question of mistake or fraud have been uniformly held to be proper questions for the board to determine as an initial step in the administration of the Workmen's Compensation Laws. The piecemeal practice suggested by appellant of having a court of competent jurisdiction first pass upon the mistake or fraud issue, and if the employee be successful on the issue, then require him to again apply to the board for compensation, is not practicable. Such procedure can only lead to confusion and complications in the administration of the act. We therefore conclude in this case that the board, in the performance of its initial duties and in the performance of its administrative and quasi judicial functions as required by the statutes, had not only the authority to set aside the compromise settlement for fraud, but to adjudicate at that time and in connection with appellee's application or claim for such compensation and medical and hospital services as he might show himself entitled to receive; and that its refusal to act in that regard constituted a denial of appellee's claim, and from which action he has correctly prosecuted this appeal.

■ By its second proposition appellant contends that, as a matter of law, the evidence showed no mistake or fraud imputable to it which might have induced appellee to execute the compromise agreement approved by the board. We do not sustain the contention.

Appellee alleged that both the settlement agreement and the order approving it were induced by mistake; or, if not by mistake, by the fraud of appellant, it being alleged that for a long period of time subsequent to his injury appellee was repeatedly examined by, and was continuously under the observation of, physicians employed by appellant, by reason of which fact the nature, extent, seriousness, and permanency of his injury and any disease resulting therefrom were peculiarly well known to appellant; that, shortly prior to the settlement agreement and the approval thereof by the board, Dr. T. V. Jennings was appointed by the board to examine appellee and to report his findings to the board; that Dr. Jennings reported that he was unable to find any complications that might be the result of appellee's injuries, and that there was no evidence then existing that he had ever suffered any injuries; that said report was made recklessly and without knowing whether or not it was correct; and that appellant, its agents and employees, well knew that said report was incorrect, but knowingly and willfully concealed from appellee the inaccuracies and errors therein; that appellee relied particularly upon the representations of Dr. Jennings, and that his report was true; and would not have made the agreement but for such report to the effect that he had entirely recovered of his injuries; when in fact he was at the time and is now suffering from pulmonary abscesses; hernia, shock, and jar to all parts of his body as the result of his injuries, which totally and permanently disabled him.

The record shows that appellee was injured on January 29, 1931, while in the course of his employment, by being struck with the "Johnson bar" of a wheeled scraper, which he was operating, and by the scraper passing over his body, resulting in cuts and bruises on his ear, head, shoulder, and chest; and, according to the first attending doctor, in a "fractured clavicle, fractured ribs and sternum." A claim for compensation was duly filed with the Accident Board. Appellee was treated by appellant's doctor, T. K. Turney, on January 29 and 30, and February 2, 5, and 15. Dr. Turney reported to appellant March 14 that "patient discharged as cured Febru-

ary 15, 1931, * * * patient able to resume work February 20, 1931." Shortly before this last date, appellee moved from Robert Lee to Winters, and appellant's doctor, N. J. Smith, treated him there on March 5, 11, 14, and 21; and on March 28 Dr. Smith reported to appellant that "patient pronounced able to resume work as of March 21, 1931. Patient discharged as cured on 3/21/31." And further reported, as follows: "I removed old dressing and redressed patient. I consider patient has recovered from injury, but am of the opinion he is likely to be a Tubercular, though he can do some work. I think it best for you to dismiss his case, as I am doing."

In March prior to these reports, appellant had paid appellee two weekly payments of $7.78 each; but, after receiving these reports from its doctors, appellant made no further payments. Appellee's condition gradually grew worse, and on April 21, 1931, his wife took him to the State Tuberculosis Sanitorium for examination. Dr. Anderson examined him on that date, and found a pulmonary abscess on his left lung in an incipient state; and he told Mrs. Hilton to have the family doctor make necessary papers for his admission to the sanitorium. It is not shown from the record whether any doctor made this examination for appellee. With the exception of a few days, appellee has been confined to his bed continuously since his injury. The evidence shows that from the date of his injury he coughed intermittently and spit up blood. In the latter part of April appellee's wife employed a lawyer to take up with the board why compensation had been stopped. On May 9, 1931, the board appointed Dr. Thos. V. Jennings to make an examination of appellee for the purpose of giving "the Board the very best and most disinterested information obtainable respecting (his) actual condition." Dr. Jennings made his report on May 15, 1931, which was received by the board May 18, 1931, that appellee "complains of injury to left side of chest on January 29, 1931. He suspects abscess of lung or Tuberculosis as a direct result of said injury. * * * Expansion good breath sounds rather exaggerated on both sides, few moist rales over entire chest but that may happen in any smoker's chest, and he smokes. XRay picture showed nothing abnormal." Other findings not material here were made, and the report concluded as follows: "I am unable to find any complications that might be direct result of above injury, nor any positive evidence that he had ever had an injury, since it has all entirely cleared up."

Thereafter, on May 21, 1931, appellant's agent called upon appellee's attorney and proposed the compromise settlement, and told him of the previous reports of appellant's two doctors to the effect that appellee had entirely recovered of his injuries, and had been by them discharged as cured; and, after examining and knowing of Dr. Jennings' report, and after consulting with and being told by appellant's two doctors that appellee had entirely recovered of his injury, and that they had discharged him as cured, the attorney told appellee and his wife that he saw no relief for them, and left it to them if they would make the compromise agreement; and that at their suggestion he drew the compromise agreement and had it executed, the agent being present and signing for appellant. The compromise settlement agreement was executed in accordance with the provisions of section 12 of article 8307, reciting a consideration of $50, and that his injury was uncertain and indefinite, or incapable of being satisfactorily established. The agreement was filed with the Accident Board and approved by it June 23, 1931; the order further reciting that a "compromise settlement receipt," showing that appellee had received $75 in full accord and satisfaction of his claim, had been filed with the board. Just why the extra $25 was so paid is not shown from the board's record. On July 28, 1931, appellee filed his application to set aside the compromise agreement for fraud, and to reopen the case, and award him compensation. The attorney further testified that he would not have made or suggested the agreement but for the statements of appellant's doctors, and particularly the statement of Dr. Jennings, to the effect that appellee had entirely recovered of his injuries; and that these representations alone induced him to recommend or suggest the settlement. A few days after the settlement agreement was executed, appellee had a severe hemorrhage, spitting up blood and pus. Appellee's family physician for several years preceding his injury testified that he had treated him for pneumonia and chickenpox; and that he had no symptoms of tuberculosis before the injury; and that he was a tenant farmer until shortly before he was employed in the employment in question, in which he was doing manual labor of handling a scraper. Another doctor of many years' experience in the treatment of tuberculosis examined appellee on November 20, 1931, and found him to be suffering from pulmonary abscess of the left lung in advanced stages, and also to a lesser degree in the right lung, and from which he was of the opinion appellee would never recover. It was the opinion of this expert, based upon the facts as detailed in the evidence, that "in all probability a tuberculosis inflammatory process developed under that combination of circumstances, due to the occurrence of the trauma"; that is, from having received the fracture of his ribs, chest bone, and collar bone when struck by the Johnson bar of the scraper. He also stated from his examination of appellee he could tell that tubercular abscesses had existed for some months previous to the time of the examination.

Appellant insists that this evidence is in-

126

sufficient to establish fraud for three reasons, as follows:

(1) That the report of Dr. Jennings was made in good faith; (2) that his report was not relied upon by appellee; (3) that he was not the agent of appellant in making the report.

■ The evidence would undoubtedly support the conclusion of the jury that Dr. Jennings made a very perfunctory examination of appellee and did not know whether he was suffering of tuberculosis at the time of the examination; or, if he did know it, made a false representation in that connection; and, if he did not know it, he positively represented that he was not suffering from tuberculosis at the time. The rule is that fraud exists where one makes a false representation of a material fact knowing it to be false, or of his own knowledge, when he does not know whether it is true or false, thereby inducing the person to whom it is made, or who is relying upon it, to do or to refrain from doing something to his pecuniary hurt, when such person, acting with reasonable prudence, is thereby deceived and induced to do or refrain from doing the thing to his damage. Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Schallert v. Boggs (Tex. Civ. App.) 204 S. W. 1061; Cohen v. Lewis (Tex. Civ. App.) 44 S.W.(2d) 468; Ford v. Sims (Tex. Civ. App.) 190 S. W. 1165; Morrison v. Adoue, 76 Tex. 255, 13 S. W. 166; 2 Bouvier's Law Dictionary (Rawle's Third Revision), 1304; White v. Peters (Tex. Civ. App.) 185 S. W. 659; 26 C. J. 1109.

The evidence of the lawyer who represented appellee in the compromise settlement is uncontroverted that he did rely upon the representations of Dr. Jennings in recommending the compromise settlement, and would not have done so but for the representations.

■■ Nor do we sustain appellant's third contention that the alleged mistaken or fraudulent report of Dr. Jennings was not attributable to it, because he was not the agent of appellant in making the report, but of the board. The settlement agreement under its own terms and the statutes relating thereto had no legal or binding effect until approved by the board. Texas Employers' Ins. Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633 (writ of error refused). The evidence is undisputed that the attorney for appellee relied particularly upon this report of Dr. Jennings in making or in recommending the making of the settlement agreement. He had also been theretofore informed by appellant's doctors who had attended appellee that he had been discharged by them as being entirely recovered of his injury. The report of Dr. Jennings also induced the board to approve the compromise settlement agreement. It was filed with the board May 18, 1931. On May 28, 1931, appellant filed the compromise agreement together with the previous reports

to it of its two doctors, to the effect that appellee had entirely recovered of his injury on the respective dates mentioned. On May 29, 1931, the board began its hearing of the settlement agreement, and, after the filing in June of the "compromise settlement receipt" by appellant, approved the agreement June 23, 1931.

The evidence is also undisputed that appellant had in its possession the report of its Dr. Smith, that he was "of the opinion he (appellee) is likely to be a tubercular," which particular information was not shown to have been made known to appellee's attorney before he made the recommendation of settlement. The evidence is also undisputed that appellant as well as appellee relied upon all of the doctors' statements, including that of Dr. Jennings, to the effect that appellee had entirely recovered of his injury, in inducing the board to approve the settlement agreement, which approval was necessary to its validity. And the only fraud issue submitted, with the jury's answer thereto, reads as follows:

"Do you find from a preponderance of the evidence that Dr. T. C. Jennings' report of plaintiff's purported recovery dated May 15, 1931, to the Industrial Accident Board was a report not known to be true? Answer 'he did' or 'he did not' know it to be true. Answer: He did not know it to be true."

■ We therefore conclude that, since all parties relied upon this report, which induced the agreement and its approval by the board, and since the approval by the board was necessary to the validity of the agreement, the order so induced by fraud should be set aside. Nor can this rule be affected because appellant's particular agent who signed the contract may not have known that the report was false, because all parties relied upon it as being true in obtaining the approval of the board of the settlement agreement; and manifestly appellant cannot take advantage of such fraud.

■ With respect to the charge that the report of Dr. Jennings was due to mistake, we have concluded that the question was properly considered, not as a separate independent ground for review of the award, but in connection with and as an element of fact on the fraud issue of whether the report was made not knowing it to be correct. Estes v. Hartford A. & I. Co., supra.

■ Nor do we sustain appellant's proposition in this connection, that, if the evidence was sufficient to sustain the issue of fraud, the court erred in refusing to give in that connection the following requested issue: "Was the compromise agreement introduced in evidence herein procured by fraud of the defendant or any agent of the defendant? Answer yes or no."

■ The requested issue was not pertinent to the fraud issue submitted and above quot-

ed. The only other pertinent element of fraud material to the theory of fraud submitted was whether the board was induced by the report of Dr. Jennings to approve the settlement agreement. This issue was not requested, and it will be presumed that the trial court found this issue in support of the judgment rendered under the rule announced in the case of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

By its third proposition appellant contends that there was not sufficient competent evidence upon which to base the award and the judgment to the plaintiff of $5,000 for medical bills and hospital expenses.

Special Issues 8 and 9, with the jury's answers thereto, read as follows:

"Do you find from preponderance of the evidence that proper care of plaintiff would require confinement, medical and hospital services ordinarily furnished in hospitals? Answer 'yes' or 'no.' Answer: Yes."

"What amount, if any, and not exceeding $12,300 do you find from preponderance of the evidence would furnish reasonable compensation for the services mentioned in the next preceding interrogatory? Answer by stating the amount. Answer: $5,000.00."

■ In substance the charge and the issue submitted both follow the language of the statutes authorizing the recovery of medical and hospital services. Sections 7, 7a, and 7b of article 8306. The evidence supports the verdict of $5,000, as "reasonable compensation" for medical and hospital services ordinarily furnished in hospitals. The care, meals, medical attention, etc., furnished to a disabled employee commensurate with his reasonable needs are included in hospital services, and need not be furnished in a hospital, but may be furnished in a private residence. Southern Surety Co. v. Beaird (Tex. Civ. App.) 235 S. W. 240.

■ Nor is there any merit to the contention that the statutes referred to only authorize compensation for medical and hospital services for four weeks, to be allowed on proper application to the board one week in advance. The statutes authorize such services "during the fourth or any subsequent week of continuous total incapacity requiring confinement to a hospital." It is true in this connection that the board, so long as it has jurisdiction of the claim for compensation, may only allow such expenses weekly, but, when its jurisdiction has been ousted by an appeal to the courts, these limitations of the statutes are no longer applicable. And it was held in the case of Federal Surety Co. v. Cook, 119 Tex. 89, 24 S.W.(2d) 394, that, absent statutory authority to that effect, the district court has no authority to revise its judgment awarding weekly compensation after the term expires, on proper showing regarding change of conditions, mistake, or fraud at any time in the compensation period. By analogy the same is true with respect to the continuing authority to allow weekly compensation for future medical and hospital services. Consequently, the judgment on appeal may cover all future medical and hospital services which the employee might be entitled to receive during the compensation period. The amount reasonably necessary for these future expenses is therefore for the jury to determine from the facts and circumstances of the case and the issues submitted. These future expenses are necessarily "impossible of very exact computation or assessment, and hence the determination of the amount is deemed to be peculiarly within the discretion of the triers of facts." 13 Tex. Jur. p. 183, § 89, and p. 189, § 94, and cases there cited.

■ By its fourth proposition appellant contends that the lump sum judgment for $2,545.57 is erroneous because there was no evidence from which the proper rate of discount could be determined, and cites the case of Holloway v. Texas Indemnity Ins. Co. (Tex. Com. App.) 40 S.W.(2d) 75, which announces the rule contended for by appellant. But that rule has been suspended by the later statutory rule of discount provided by article 8306a, Acts 42d Legislature, chapter 248, section 1 (Vernon's Ann. Civ. St. art. 8306a), which provides that, where the insurance company redeems its liability for payment of "weekly compensation," the "discount shall be allowed for present payment at 6% per cent compounded annually." The decisions construe this present law as authorizing the discounting of a lump sum award 6 per cent., regardless of pleadings or proof, and a finding as to proper discount rate. Traders' & General Ins. Co. v. Powell (Tex. Civ. App.) 44 S.W.(2d) 764; Indemnity Ins. Co. v. Bailey (Tex. Civ. App.) 50 S.W.(2d) 484.

■ By its fifth proposition, appellant makes this same contention with reference to the allowance of $5,000 in lump sum for future medical and hospital services. Appellant asserts in its brief that, with respect to the "question as to awarding $5,000.00 as a lump sum for hospital services, it seems to be in the same category with weekly compensation." If so, then the last above quoted statute, authorizing the 6 per cent. discount, is applicable, and no necessity existed for proving the proper discount rates, as above held.

■ Appellant did not request any jury issue as to the amount of weekly compensation for medical and hospital services, and as furnishing a basis for discounting same 6 per cent. for present payment; nor did it object upon that ground to the issue submitted, and in answer to which the jury found that $5,000, if paid now, would be reasonable for such expenses. Appellant will therefore be held to have waived the question of proper discount for present payment.

The remaining proposition is not sustained that Dr. Cornick should not have been permitted to give his expert testimony that appellee was in a tubercular condition when he examined him in November, 1931, as the result of trauma, because he based his opinion on the history of the case, but without giving the history of the case. The history of the case was in evidence, and the hypothetical question propounded was predicated upon this evidence.

The judgment of the trial court will be affirmed.

Affirmed.