COMMERCIAL CASUALTY INSURANCE COMPANY V. I. C. HILTON.

No. 6432.   Decided December 4, 1935.
Rehearing overruled January 29, 1936.
(87 S. W., 2d Series, 1081; 89 S. W., 2d Series, 1116.)

498

*Harris, Harris & Sedberry*, of San Angelo, *Touchstone, Wight, Gormley & Price*, of Dallas, for plaintiff in error.

Where employee, being injured under circumstances which would entitle him to compensation under Workmen's Compensation Law, having made a compromise with the insurer, which compromise was approved by the Industrial Accident Board whom he later petitioned to set aside said agreement, which they refused to do, and he appealed from such order of the board, the district court has no jurisdiction other than to try the issue of whether or not said compromise settlement should be set aside, and cannot consider matters of estimated costs of medical and hospital service. Garsee v. Indemnity Ins. Co., 47 S. W. (2d) 654; Benson v. Travelers Ins. Co., 40 S. W. (2d) 966; Maryland Casualty Co. v. Meyer, 41 S. W. (2d) 291.

The defendant insurance company should have had an instructed verdict where the record showed that the only evidence of fraud charged against the insurance company and the physician engaged by the Industrial Accident Board was a suggestion that said report was incorrect. El Paso & S. W. Ry. Co. v. Kramer, 141 S. W., 122; Ormsby v. Ratcliffe, 117 Texas, 242, 1 S. W. (2d) 1084; Norwich Union Ins. Co. v. Chancellor (Com. App.), 5 S. W. (2d) 494.

*Kerr & Gayer,* of San Angelo, for defendant in error.

The statutes provide valid statutory authority for the Industrial Accident Board on the application of claimant showing fraud, to review its previous order approving a compromise settlement agreement, within twelve months after its entry. Greene v. Robison, 117 Texas, 516, 8 S. W. (2d) 655; Middleton v. Texas Power & Light Co., 108 Texas, 96, 185 S. W., 556; Gulf C. & S. F. Ry. Co. v. City of Dallas, 16 S. W. (2d) 292.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

A full statement of the case is made in the opinion of the Court of Civil Appeals. 55 S. W. (2d) 120. An abridged statement will be sufficient for the purposes of this decision.

I. C. Hilton was the employee and Commercial Casualty Insurance Company was the insurer, as those terms are employed in the Workmen's Compensation Law. The employee was injured in the course of his employment. Later a settlement was made between him and the insurer, the terms of which being reduced to writing and signed by the respective parties. After conducting an independent investigation of its own, the Industrial Accident Board entered an order approving this contract of settlement, and the insurer paid to the

employee $75.00, the amount owing under the terms of the settlement contract. Thereafter, the employee made application to the Industrial Accident Board to set aside the compromise settlement agreement theretofore approved by it and to award him an allowance for medical and hospital services and compensation for total permanent incapacity. The board refused to set aside the contract and the order approving it, assigning as its reason for so doing that, "Under the decisions of the Supreme Court in the cases of Lumbermen's Reciprocal Association v. Henderson, and Lumbermen's Reciprocal Association v. Day, we do not think we have jurisdiction to pass upon the questions raised in said application and for that reason we have today declined to set the application down for hearing."

The employee gave notice of his intention not to abide by this ruling and then filed this suit in the district court in the form of an appeal from the order of the board. Upon a hearing, the trial court set aside the compromise agreement and the order of the Industrial Accident Board approving same on the ground of fraud in their procurement and awarded the employee $2,545.57 compensation in a lump sum and $5,000 for medical and hospital services. The Court of Civil Appeals affirmed the judgment of the trial court.

■ It has been the law in this State since the decision in Lumbermen's Reciprocal Association v. Henderson, 15 S. W. (2d) 565, that the Industrial Accident Board has no jurisdiction to set aside a compromise settlement agreement. By reference to the many opinions citing the Henderson case, it will be observed that there is confusion as to the grounds upon which that decision was based. A restatement of the grounds seems, therefore, appropriate.

The Industrial Accident Board is not a court, but an administrative body created by statute, and possessing those powers only which are conferred upon it by statute. In the opinion of the Court of Civil Appeals in this case, as well as in opinions of other courts not necessary here to cite, Article 8306, Sec. 12d, R. S. 1925, as amended by Acts of 1931, 42nd Legislature, p. 260, ch. 155, Sec. 1, is construed as conferring upon the Board the power to set aside compromise settlement agreements made by the parties and the orders of the Board approving same. If that article, by its terms, conveys that power, then the question presented would be one of its constitutionality. But, if the article does not, by its terms, con-

vey that power, then a constitutional question is not reached. The article reads as follows:

"Upon its own motion or upon the application of any person interested showing a change of condition, mistake, or fraud, the Board at any time within the compensation period, may review any award or order, ending, diminishing or increasing compensation previously awarded, within the maximum and minimum provided in this Law, or change or revoke its previous order denying compensation, sending immediately to the parties a copy of its subsequent order or award. Provided, when such previous order has denied compensation, application to review same shall be made to the Board within twelve months after its entry, and not afterward. Review under this Section shall be only upon notice to the parties interested."

■ This article does not relate to the question of setting aside compromise settlement agreements or orders approving same. The only powers therein conferred upon the Board are to review awards of compensation previously made and to change or revoke previous orders denying compensation. The Board's approval of a compromise agreement is not an award of compensation. Lumbermen's Reciprocal Association v. Day (Com. App.), 17 S. W. (2d) 1043. Neither is it an order denying compensation. In short, the Board has no authority to set aside a compromise settlement agreement or its order approving same. Were the parties to such an agreement left to look alone to the Workmen's Compensation Law, there would be no way to avoid its binding effect. The power of the courts to set aside such an agreement for fraud is not derived from the Workmen's Compensation Law, but exists by virtue of the Constitution and general statutes defining their jurisdiction. Whenever a party to such contract claims to have been induced to execute same through fraud of the other party, the court is the forum and the only forum to which he may resort.

■ Until the compromise settlement agreement is set aside by the court, the Industrial Accident Board is without power to pass upon a claim for compensation, and its order declining to pass on such claim until such agreement has been set aside, is not an order denying compensation. It cannot deny compensation when it has no jurisdiction to pass on that question.

■ A court has no jurisdiction to pass upon a claim for com-

pensation unless its jurisdiction is invoked by an appeal from an order of the Industrial Accident Board either awarding or denying compensation. It results, that the only judgment which the trial court was empowered to render in this case was one setting aside the compromise agreement for fraud. Insofar as it passed upon the issues of compensation and medical and hospital expenses, it exceeded its jurisdiction. The effect of such holding may be to require a case to be tried by piecemeal, but it must be tried that way or not at all.

The petition in this case, while in form an appeal from an appeal from an order of the Industrial Accident Board, is nevertheless sufficient to invoke the jurisdiction of the trial court to cancel the compromise settlement agreement for fraud. There is, therefore, presented for decision the question of whether there was any evidence of fraud in the procurement of the agreement. The pleading placed the fraud of the insurer upon two grounds. One of those grounds was that the attorney who at that time represented the employee was competent and well qualified in the general practice of the law, but was inexperienced in the Workmen's Compensation Law. That the insurer, through its adjuster, orally represented to said attorney:

" * * ** that it had specialized in the Workmen's Compensation Laws of the State of Texas, had made detailed studies of all the reported decisions of the courts of this State and of all other jurisdictions having similar Workmen's Compensation Laws and that the defendant represented that it was then a well established fact within their peculiar knowledge that the probability of this plaintiff's having had tuberculosis prior to the date of the above mentioned injury, even though the presence of such germs in his lungs had never previously afflicted or in any manner impaired his health, would deprive him of all right of compensation for disease of that kind aggravated by and resulting from the above mentioned injuries. That plaintiff and his said attorney relied on such representations also. That all such representations were false and untrue, and were made with knowledge of their falsehood, and with reckless disregard for the truth or falsity thereof without knowing whether or not the same were true, and with the intent to obtain plaintiff's signature on said compromise agreement. That relying on said representations, and not otherwise, plaintiff executed such agreement. And that, but for such representations, and that unless each and all of the repre-

sentations by said physician and defendant, and their agents and employees had all been made as set forth hereinabove, plaintiff would not have made the above mentioned compromise."

No evidence was offered supporting this ground and no issue was submitted or requested by the employee to be submitted thereon. It will, therefore, not be further adverted to.

The other plea of fraud was in this language:

"That, at the time of such purported settlement, said Industrial Accident Board had appointed as its physician with reference to the matters involved herein Doctor T. V. Jennings, of Winters, Texas, who made a physical examination of plaintiff on or about the 15th day of May, A. D. 1931. That said physician, purporting to act therein as the physician appointed by said Board, made a written report to said Board, stating therein that he was unable to find any complications that might be the result of the above mentioned injuries, or any evidence that plaintiff had ever suffered any injury. That such report was made recklessly, without knowing whether or not the same was correct, and that in truth and in fact plaintiff had never recovered from the effects of said injury, and will never recover therefrom. That the defendant herein well knew that said report was incorrect, but knowingly and wilfully concealed from this plaintiff the inaccuracies and errors therein.

"But that plaintiff, being ignorant in regard to such matters, and the causes of his illness and unable to employ physicians of his own selection, was informed by the above named physician, and by the agents and employees of the defendant named hereinbelow, that the illness from which he was then suffering was caused by the recent doses of some kind of purgatives, was forced to rely, and did rely on said reports."

The evidence in support of this alleged fraud was to the effect that, before the Industrial Accident Board approved the compromise settlement between the parties, it caused a letter to be written to Dr. Thos. V. Jennings, of Winters, Texas, advising him that Mr. Hilton had been directed by the Board to present himself at Dr. Jennings' office on a named date to submit himself to an examination; that the purpose of the examination was to give the Board the very best and most disinterested information obtainable respecting the actual condition of the claimant; and that, "Your selection by the Board for this purpose has been occasioned by the high position you occupy in your profession and your well established reputation for frankness and fairness." The letter advised Dr. Jen-

nings that the funds provided the Board for the purpose of having medical examinations conducted were limited, for which reason it was not possible always to pay adequately for the services performed, but that it had been the experience of the Board that physicians selected by it, being actuated by patriotic motives, have undertaken the work for small remuneration and have rendered most helpful aid. At the appointed time Mr. Hilton, with his attorney, appeared in Dr. Jennings' office, and, after examination, the following report was made by the Doctor and forwarded to the Board:

"May 15, 1931.

"Industrial Accident Board,
"Austin, Texas.
"Dear Sirs:

"I am reporting the findings in examination of I. C. Hilton, as per your request of May 12, 1931.

"CHIEF COMPLAINT:

"Patient was brought into my office on stretcher. Complains of injury to left side of chest on Jan. 29, 1931. He suspects abscess of lung or Tuberculosis as a direct result of said injury.

"PHYSICAL EXAMINATION:

"Temperature 98.4; pulse 66; respiration 18; blood pressure 105/70. General appearance good, no evidence of previous injury, showing identical as right. Expansion good, breath sounds rather exaggerated on both sides, few moist rales over entire chest but that happen in any smokers chest, and he smokes. XRay picture showed nothing abnormal.

"BLOOD COUNT:

"White cells 7400; hemoglobin 67%.

"URINALYSIS:

"Reaction acid; appearance clear; specific gravity 1018; albumin and sugar negative; a few fine granular casts.

"DENTAL EXAMINATION:

"Teeth fair, pyorrhea grade iv, and is capable of giving him more trouble than any of my findings.

"Reviewing the findings I will state that I am unable to find any complications that might be direct result of above

injury, nor any positive evidence that he has ever had an injury, since it has all entirely cleared up.

"Any further data I can supply you I will gladly do.

"Yours truly,

"T. V. JENNINGS."

Upon this report defendant in error rests his case of fraud in this court. The rule is invoked that, in indivisible three-party agreements, fraud on the complainant by either of the other parties vitiates the agreement of all parties. The further rule is invoked that the fruits of fraud may never be properly retained by anyone until value has been paid. These rules have no application to the facts of this case.

Article 8307, Sec. 12, provides: "The Board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

■■ The effect of this article is to render compromise agreements ineffective until approved by the Board. Petroleum Casualty Co. v. Lewis, 16 S. W. (2d) 1066 (Writ of Error Ref.), and the authorities therein cited. From this the conclusion is urged that the Industrial Accident Board becomes a party to a compromise agreement approved by it. This we find it unnecessary to consider, because there is no evidence in the record that the Board committed any fraud. Its action in calling upon Dr. Jennings for a report is to be commended rather than condemned. It could well have approved the settlement agreement without making an independent investigation. It is contended that Dr. Jennings was the agent of the Board, and that his report was fraudulent. We cannot agree to this contention. Dr. Jennings was not the agent of the Board in the sense that the doctrine of respondeat superior would apply. Neither does the record reveal any fraud on his part.

The judgments of the trial court and of the Court of Civil Appeals are both reversed and judgment is here rendered that the defendant in error take nothing.

Opinion adopted by the Supreme Court December 4, 1935.

### ON MOTION FOR REHEARING.

We desire to correct an inaccuracy appearing in the original opinion and pointed out in the motion for rehearing. The request made by the Industrial Accident Board to Dr. Jennings for a report on the condition of the employee was made, and the report of Dr. Jennings was returned prior to the making of the contract of settlement, and not after the contract was

submitted to the Industrial Accident Board for its approval. This inaccuracy in no sense weakened the contention of the employee that the contract should be set aside for the fraud of the Board or its agent, but we are glad our attention was called to it. The correction makes it all the more certain that Dr. Jennings was not the agent of the Board.

The motion for rehearing has been given due consideration and is overruled.

Opinion adopted by the Supreme Court January 29, 1936.