TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellant,

v.

Bruno SOLIZ, Appellee.

No. 12905.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 23, 1956.

Rehearing Denied March 21, 1956.

Lewright, Dyer, Sorrell & Redford, S. E. Dyer, Walter Dunham, Jr., Corpus Christi, for appellant.

Lon Herbert, Alice, Luther E. Jones, Jr., Corpus Christi, for appellee.

POPE, Justice.

This is a workmen's compensation case and concerns the application of the legislative plan outlined by Section 6a, Article 8307, Vernon's Ann.Civ.Stats. Texas Employers' Insurance Association appealed from a judgment in favor of Bruno Soliz, the employee, in the amount of $3,250.40. The Association urges that the employee lost his right to proceed against the Association for compensation by reason of estoppel and the employee's exercise of his statutory election to proceed against a third party by accepting a common law release, even though the release was subsequently cancelled by reason of its fraudulent inducement. In our opinion the Association's contentions are correct statements of the law.

Bruno Soliz, an employee of J. W. Crawford Construction Company, was injured in an automobile accident on May 14, 1948. On June 10, 1948, he executed a common law release to Thomas & Ratliff and others, and received for his release the sum of $778.05. Sometime prior to February 17, 1949, he discovered fraud in connection with the inducement of his release. On February 17, 1949, he filed a notice of injury and claim for compensation with the Industrial Accident Board. On April 26, 1949,

the Board cancelled a compensation hearing "from the Board's docket for the reason that claimant has made settlement with the third party for the sum of $778.05." The employee pursued no further action by way of appeal or otherwise, by reason of the procedure suggested by Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116. That procedure is to file suit in the district court to cancel a common law release. The employee filed such a suit on January 31, 1950, which was almost one year after the discovery of fraud. Two pleas of privilege were then tried and pursued to the Courts of Civil Appeals. Trinity Universal Ins. Co. v. Soliz, Tex.Civ.App., 241 S.W.2d 625; Id., Tex.Civ.App., 251 S.W.2d 904. On September 23, 1953, the trial court entered judgment cancelling the release and two days later Soliz filed an amended notice of and claim for injury before the Industrial Accident Board. The Board dismissed the claim because, (1) the employee had exercised an election to proceed against the third party, (2) the employee failed to file his claim within six months, and (3) failed to show good cause for the late filing. The employee appealed from the adverse Board order, perfected his appeal to the district court, and obtained judgment for compensation, which the Association says should be reversed. Though the employee filed suit in the district court to cancel the common law release, he never filed an action for damages against the third party. He retained and still has the funds paid him for the release, and the trial court credited that sum against the compensation judgment.

The Association, by this appeal, raises many points. Among them are the points that the employee exercised his statutory election to proceed against the third party and the employee is estopped to claim compensation. From the chronology of events, it is apparent that when the employee filed his notice and claim with the Board on September 25, 1953, he had no common law action against the third party, for it was then barred by limitations.

The employee does not urge that the filing of his claim for compensation upon discovery of the fraud in February of 1949, before the release was set aside, had the effect of tolling limitations as to his or the Association's third-party action. His point is that he could not proceed for compensation until the release was cancelled on September 23, 1953. Texas Employers' Ins. Ass'n v. Kennedy, Tex.Com.App., 135 Tex. 486, 143 S.W.2d 583; Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116. We agree that the Board had no jurisdiction, but we do not agree that the employee did all that he could have done. He could have filed suit one year earlier. He could have brought suit against the third party for damages. He could have first collected compensation and then sued the third party. But the important matter from this development of the case is that the employee makes no contention that the statute of limitations was tolled as regards the third-party action by the filing of the compensation claim in 1949, when the Board had no jurisdiction.

The Association argues that the employee, by executing the release, made an "election to proceed." The employee argues that the cancellation of the release fully erased its operative effect as an election to proceed. We have been unable to find a similar factual situation. In our opinion, instead of looking to the single word "proceed" as used in the statute, we should look at the whole legislative plan manifested by Section 6a, Article 8307, to determine whether it has been followed or defeated, and, if not followed, which party failed to follow the plan.

The first sentence of Section 6a, Article 8307, provides that an "employé may at his option proceed either at law against [the third party] to recover damages or against the association for compensation under this law, but not against both". Only the employee can exercise that option. The second sentence looks in the direction of a claim for compensation, and provides, in the event of such claim, that the Association which pays compensation "shall be subro-

gated to the rights of the injured employé". The Association may enforce those rights against the third person. This may be done "in the name of the injured employé", "or in its own name". That sentence shows that the Association becomes owner of the right against the third person to the extent of any money it pays the employee for compensation. The section protects the Association's third-party action as well as the employee's third-party action.

What has happened to the legislative plan which gives the employee an option to proceed against either the third party or the compensation carrier and also protects the Association's rights? The employee suffered his injury on May 14, 1948, executed his common law release the following month, sometime before February 16, 1949, discovered that the release was induced by fraud, waited eleven and one-half months, and then on January 31, 1950, filed a suit to set aside the release, and finally succeeded, by judgment of the district court, on September 23, 1953. Two days later he filed his claim for compensation.

The employee has never filed a common law negligence suit against the third party. On September 25, 1953, when he filed his compensation claim, his third-party action was barred by limitations, which commenced to run upon discovery of the fraud. Texas Central R. Co. v. Hawkins, Tex.Civ.App., 163 S.W. 132. Section 6a contemplates an "option to proceed," but Soliz, on September 25, 1953, had no option to go in either of two directions. By permitting limitations to run, one of his alternatives was already exhausted. In addition to the two statutory alternatives, the law provides yet a third option—that of doing nothing. The consequences of that action may wholly destroy the employee's rights either to a claim or an action.

The Association by the act is subrogated "to the rights of the injured employé". If the employee has no rights neither does the Association. Hence, on September 25,

1953, there was nothing to which the Association could be subrogated, and the legislative plan was defeated. So far as the Association's rights were concerned, a limitation plea as effectively defeats the Association's rights as if the release from the third party had been valid, or the third party had won a final judgment.

The employee, from the date of the release until the judgment cancelling it on September 23, 1953, was in full control of the litigation and of the option to proceed. The Association could file no suit and could do nothing to toll the running of limitations against an action by the employee and it as subrogee. Though the employee may not, by reason of the abortive release, have had a choice between an action and a claim, he at least still had his action against the third party. He also had the power to destroy the subrogation rights of the Association. The employee had some legal protection, but the Association had none. When the employee in control of the litigation so manages the litigation that his own rights against one of the alternatives are lost or destroyed, thereby losing or destroying those also of the subrogee, he has exercised an option to proceed. More accurately, it may be termed a failure to exercise the option, but the significant point is that the employee is the one who has entirely used up all right to institute the third-party action. The legislative plan entitles him to exhaust only one of his alternatives, and the employee had already done that when he filed his claim in 1953. See Taylor v. Mount Vernon-Woodberry Mills, 211 S. C. 414, 45 S.E.2d 809; Broderick's Case, 320 Mass. 149, 67 N.E.2d 897.

By another point, the Association urges that the employee has prejudiced the Association's subrogation rights to such an extent that the employee is estopped to assert a claim for compensation against the Association. We agree with the point. The Association has lost its rights against

**168**

the third party, and this is so not because of anything that the Association has done or could have done. It was a stranger to the negotiations about the third-party release, did not participate in the fraud, and, after its discovery, could not file or compel the employee to file a suit against the third party. The Association, though blameless and helpless is now also actionless, yet it is now the only one called upon to pay.

Employers' Indemnity Corp. v. Felter, Tex.Com.App., 277 S.W. 376, 378, is in point. It states:

"Under the facts in this case, plaintiff in error has been absolutely deprived of its right of subrogation. This article of the statute has been wiped out. If, at the very moment the first effort was made to recover compensation, the plaintiff in error had filed suit against the tort-feasors in an effort to protect itself to the extent it might be called upon to pay compensation, such suit would certainly have been answered by two contentions by the defendants. In the first place, limitations would doubtless have been pleaded and successfully. Furthermore, res adjudicata would unquestionably have been pleaded and also successfully. So it is quite clear that, as a result of the conduct of the Felters, plaintiff in error has been deprived of its valuable right, in its own way, and through its own agents and attorneys, to sue the alleged tort-feasors and attempt to recoup the amount of compensation it was being called upon to pay."

The Commission of Appeals in Texas Employers' Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982, approved the Felter case. See, also, Ocean Accident & Guarantee Corporation v. Cooper, Tex.Civ.App., 294 S.W. 248, 250; McKee v. White, 244 N.Y. 610, 155 N.E. 918.

The judgment is reversed and rendered that the appellee take nothing.